**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Scottsdale Capital Advisors Corporation,<br><br>   Plaintiff/Counterdefendant,<br><br>           vs.<br><br>Renegade Promotions, LLC,<br><br>   Defendant/Counterclaimant. | No. CIV 04-1045-PHX RCB<br><br>O R D E R |

On October 12, 2005, Defendant Renegade Promotions, LLC, filed a motion in this matter entitled "Motion to Enforce Settlement Agreement; Alternatively Motion for Summary Judgement as to Settlement Agreement."  Motion (doc. 43).[1]  Additionally, on October 20, 2005, Plaintiff Scottsdale Capital Advisors Corporation filed a document entitled "Notice of Lodging," which the Court shall construe as a motion to direct the Clerk to enter judgment.  Notice (doc. 45).  Defendant's motion was fully briefed on November

---

[1] In its motion, Defendant requested oral argument on this issue. Motion (doc. 43). Finding oral argument unnecessary, the Court shall deny this request.

14, 2005, and the Court, having reviewed the arguments presented by the parties, now rules.  Reply (doc. 49).

**I. Background Facts**

In April 2004, Plaintiff initiated this lawsuit in the Superior Court of Arizona in Maricopa County for breach of contract.  Notice of Removal (doc. 1).  After removal to this Court, Defendant filed its Answer and Counterclaim.  Answer (doc. 3).  Thereafter, in December 2004, the parties agreed to settle this case at a mediation conducted by Lawrence Fleishman.  Stipulation (doc. 41).  At that time, Defendant stipulated to a judgment in the amount of $150,000 in favor of Plaintiff, to be filed only if Defendant failed to make certain stipulated payments.  DSOF (doc. 44) at ¶ 2.

Notwithstanding the stipulated judgment, the parties, on December 6, 2004, agreed that judgement would not be entered provided that Defendant paid Plaintiff $25,000 on February 1, 2005, $35,000 on August 1, 2005 and $45,000 on October 1, 2005 ("Payment Option #1").  Exbt. A (doc. 44) at 1.  The parties further agreed that in the event that Defendant paid $50,000 on July 1, 2005, the October 1, 2005 payment would be negated ("Payment Option #2").  Id.

The parties later entered into a formal settlement agreement ("Settlement Agreement" or the "Agreement") that basically recited the above listed payment terms, with the exception that, through inadvertence or mistake, the $35,000 payment that was to be made on August 1, 2005 was listed as being due by July 1, 2005.  Exbt. B (doc. 44) at 1.  The parties do not dispute that the July 1, 2005 date listed under Section (1)(b) of the Settlement Agreement was a

typographical error, and that they each understood the date to be August 1, 2005. DSOF (doc. 44) at ¶¶ 2-3; PSOF (doc. 47). Regardless, the July 1, 2005 deadline for Payment Option #2 was correctly listed in the Agreement. Resp. (doc. 48) at 3 n.1; Exbt. B (doc. 44) at 1.

Additionally, the payments in the Settlement Agreement were defined as being due "by" the listed dates instead of specifically "on" such dates, and the separate payment options were further explained according to the aggregate amounts that were due; $105,000 total by October 1, 2005 under Payment Option #1, and $75,000 total by July 1, 2005 under Payment Option #2. Exbt. B (doc. 44) at 1. The July 1, 2005 deadline under Payment Option #2 no longer required a payment of $50,000 exactly on such date, but, instead, just required Defendant to pay a total of $75,000 by such date in order to effectuate Payment Option #2. Exbt. B (doc. 44) at 1.

Defendant made the first payment of $25,000 by February 1, 2005. DSOF (doc. 44) at ¶ 4. Then, Defendant made a payment of $50,000 on July 29, 2005; four weeks after the July 1, 2005 deadline for Payment Option #2, but prior to the August 1, 2005 deadline when $35,000 was due according to Payment Option #1. Id. This payment was made by certified check and had the term "PAID IN FULL" printed on its face. Id. Plaintiff cashed this check, however, three weeks later, Plaintiff informed Defendant that it intended to apply the $50,000 payment to the $35,000 payment it claims was due on August 1, 2005. Id.; see also Exbt. D (doc. 44). Defendant argued that it had paid in full.

The parties attempted to resolve this dispute, but were unable

to do so.  DSOF (doc. 44) at ¶ 7.  On September 27, 2005, Plaintiff's counsel wrote to Defendant's counsel, informing Defendant that unless it paid an additional $30,000 by October 1, 2005, Plaintiff would file the $150,000 judgment and would begin collection efforts.  Id.; see also Exbt. E (doc. 44).  On September 30, 2005, Defendant paid $30,000 to Plaintiff under protest.  DSOF (doc. 44) at ¶ 8.  However, thereafter, Defendant filed its motion for enforcement of the Settlement Agreement and for return of the $30,000 payment.  Motion (doc. 43).

On or about October 20, 2005, Plaintiff returned the $50,000 payment and subsequent $30,000 payment to Defendant.  PSOF (doc. 47) at ¶ 1.  Plaintiff now requests that the Court deny Defendant's motion and enter the judgment due to Defendant's failure to abide by the Settlement Agreement.  Resp. (doc. 47); see also Notice (doc. 45).

**II.   Summary Judgment Standard**

To grant summary judgment, the Court must determine that the record before it contains "no genuine issue as to any material fact" and, thus, "that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether to grant summary judgment, the Court will view the facts and inferences from these facts in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. Id. at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. Id.

A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. See id. at 250. Finally, if the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987).

**III. Analysis**

Defendant makes two main arguments as to why the Court should find that Defendant complied with the terms of Payment Option #2 of the Settlement Agreement and, thus, should order Plaintiff to return the $30,000 paid under protest. Motion (doc. 43). First, Defendant asserts that by accepting payment of the $50,000 check marked "PAID IN FULL" on July 29, 2005, Plaintiff waived its right to timely payment and accepted the payment as tendered. Id. at 4-7. In the alternative, Defendant argues that Plaintiff is bound by the doctrine of accord and satisfaction. Id. at 7-10. In response to these arguments, Plaintiff asserts that Defendant's motion should be denied and that the Court should impose the judgment to which the parties have stipulated. Resp. (doc. 48).

**A. Acceptance of Check as Waiver**

Defendant argues that because Plaintiff accepted and

-5-

negotiated the $50,000 check that was marked "PAID IN FULL," the law deems that Plaintiff waived its right to declare a breach of the Settlement Agreement. Motion (doc. 43) at 4-5. In support of its claim, Defendant cites a case from the Maine Supreme Court. Id. at 5, citing Associated Builders, Inc. v. Coggins, 722 A.2d 1278 (Me. 1999).

In Coggins, the defendant entered into an agreement to pay a debt to the plaintiff in two installments. 722 A.2d at 1279. If, however, the defendant failed to make the payments as required, interest would begin to accrue on the debt and the defendant would owe an additional $20,005.54. Id. The defendant made the first payment on time, but paid the second payment three days late. Id.

The critical question before the Coggins court was whether the defendant's late payment constituted a material breach of the accord. Id. at 1280. The Maine Supreme Court upheld summary judgment for the defendant on the grounds that there was an accord and satisfaction, and because the plaintiff had waived its right to timely payment. Id. at 1281. Relying on this case, Defendant asserts that "[a] party may waive a contractual right arising from a breach of late payment when that party accepts tender of the late payment." Motion (doc. 43) at 7. Defendant contends that the Court should follow this analysis in this matter, as its payment was only four weeks late from the July 1, 2005 deadline of Payment Option #2. Id. at 4-7.

In contrast, Plaintiff contests the assertion that it waived its right to declare a breach when it deposited the $50,000 check. Resp. (doc. 48) at 7-8. Plaintiff contends that Defendant's "waiver" argument is misplaced, because Defendant's failure to

-6-

1  follow the payment schedule defined as Payment Option #2 did not
2  equate to a breach of the Settlement Agreement.  Id.  Defendant
3  still had the option to pay according to Payment Option #1, thus,
4  Plaintiff maintains that its acceptance of the July 29, 2005
5  payment did not "waive" any claim of breach.  Id.  Plaintiff
6  asserts that the present facts are more analogous to those in
7  Northeast Insurance Company v. Concord General Mutual Insurance
8  Company, 461 A.2d 1056 (Me. 1983), and Savings & Loan Association
9  of Bangor v. Tear, 435 A.2d 1083 (Me. 1981), as opposed to those
10 described in Coggins.  Id. at 7-8.

11      The Court finds the case law cited by both parties to be
12 fairly uninstructive on the matters at hand.  At the outset, this
13 Court is not bound by the conclusions of the Supreme Judicial
14 Court of Maine.  In any event, the facts and circumstances
15 analyzed in the cited Maine cases are distinguishable from those
16 at issue here.  In Coggins, the defendant had only one option by
17 which it could pay the claimant and avoid having to pay the amount
18 for which it was originally responsible.  722 A.2d at 1279.  In
19 Northeast Insurance and Tear, the courts analyzed whether the
20 acceptance of late payments of insurance premiums and mortgage
21 payments equated to a waiver of the claimants' rights to cancel
22 the contested agreements due to breach.  461 A.2d at 1058; 435
23 A.2d at 1084-85.  Again, in both of these cases, the payers had
24 only one option by which they could pay the claimants in order to
25 avoid a breach of their contracts.  Thus, their payments could
26 clearly be deemed "late" and outside of what was contemplated in
27 their respective contracts.
28      In contrast, the Settlement Agreement that is at the heart of

this matter defines two separate methods by which Defendant could pay Plaintiff.  The Settlement Agreement describes Payment Option #1 and Payment Option #2, both of which, if paid according to the agreed schedule, would satisfy the obligations of the parties with no official judgment being entered in this Court.  The Court agrees with Plaintiff that Defendant's July 29, 2005 payment did not equate to a "breach" of the Settlement Agreement.  Although Defendant could no longer elect to follow Payment Option #2, due to the late payment of the amount due by July 1, 2005, Defendant still had the option to follow Payment Option #1.  Thus, at that time, the Settlement Agreement had not been breached, and, consequently, there was no claim of breach that could have been "waived" by Plaintiff's acceptance of the check.  The breach that Plaintiff now asserts, which is the basis of its request for entrance of the judgment, occurred when Defendant paid the final payment of $30,000 "under protest."  Resp. (doc. 48) at 6.

**B. "Paid in Full" as New Accord and Satisfaction**

In the alternative, Defendant argues that it is entitled to judgment, because Plaintiff's acceptance of the $50,000 check constituted a new accord and satisfaction.  Motion (doc. 43) at 7. The elements of accord and satisfaction are (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; and (4) consideration.  <u>Flagel v. Southwest Clinical Physiatrists, P.C.</u>, 755 P.2d 1184, 1188 (Ariz. 1988).  Defendant maintains that each of these elements exist here.  Motion (doc. 43) at 8. "There was a proper subject matter, the parties were competent, there was an assent or meeting of the minds in that SCA accepted the check knowing that the debt was to be considered as

1  'paid in full' and there was consideration."  Id.

2  In its motion, Defendant explains that the fourth element of
3  "consideration" is satisfied, because there was a "bone fide
4  dispute as to whether the amount paid on [July 29, 2005] was the
5  total amount owing," and, alternatively, because the $50,000
6  payment made on July 29, 2005 was a "prepayment of at least
7  $15,000 of the settlement amount."  Id. at 8-9.  Defendant argues
8  that prepayment is valid consideration for an agreement to accept
9  less than the full amount of the debt.  Id. at 9, citing First
10 Hartford Realty Corp. v. Ellis, 434 A.2d 314, 319 (Conn. 1980),
11 and Melroy v. Kemmerer, 67 A. 699 (Pa. 1907).  Defendant does not,
12 however, explain how the other elements of accord and satisfaction
13 are satisfied here.

14 In response, Plaintiff argues that Defendant's claim that the
15 $50,000 check constituted a new accord and satisfaction is both
16 moot and incorrect.  Resp. (doc. 48) at 4.  First, Plaintiff
17 asserts that acceptance of a check which states "payment in full"
18 constitutes an accord and satisfaction only if the subject claim
19 is unliquidated or disputed.  Id., citing Mobilife Corp. v. Delta
20 Inv. Corp., 121 Ariz. 586, 589 (Ariz. 1979); Baker v. Emmerson,
21 153 Ariz. 4, 7 (1986); A.R.S. § 47-3311(A).  In the case at bar,
22 Plaintiff contends that the parties specifically negotiated the
23 terms of the Settlement Agreement, including the amounts and
24 timing of payments, thus making Plaintiff's claim against
25 Defendant liquidated and undisputed.  Resp. (doc. 48) at 4.
26 Accordingly, despite the "paid in full" notation on the contested
27 check, Plaintiff asserts that no new accord and satisfaction could
28 have been created.  Id.

Additionally, Plaintiff argues that, pursuant to A.R.S. § 47-3311(C)(2), no new accord and satisfaction could have occurred because it tendered repayment of the $50,000 back to Defendant within 90 days of the original payment. Id. at 5. "According to Comment 6 of the Uniform Commercial Code Comments to Section 3-311(c)(2), if a claimant such as [Plaintiff] receives a check with the notation paid in full, 'it may prevent an accord and satisfaction if, within 90 days of the payment of the check, the claimant tenders repayment of the amount of the check to the person against whom the claim is asserted.'" Id.[2]

---

[2] On November 23, 2005, Plaintiff requested leave to file a surreply in this matter. Supp. Resp. (doc. 50). Defendant opposes Plaintiff's request and moved to strike the surreply. Mot. to Strike (doc. 51). Plaintiff did not file a response to Defendant's motion to strike.
In its reply, Defendant raises a specific factual issue that calls into question Plaintiff's argument regarding repayment of the July 29, 2005 check. Reply (doc. 49) at 2-3, 8-9. Under A.R.S. § 47-3311(D), a claim may be discharged,

> ...if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Defendant maintains that, despite Plaintiff's assertion that John Hurry was its president, that he had never seen the check with the notation "paid in full," and that Justine Hurry, John Hurry's wife, had deposited the check, such statements are untrue and misleading. Reply (doc. 49) at 2-3. Defendant notes that, in reality, Justine Hurry was the President/CEO, sole shareholder and sole director of Plaintiff, citing Plaintiff's Annual Report filed on July 27, 2005, two days before the issuance of the $50,000 check on July 29, 2005. Id. at 3; Exbt. A (doc. 49). Plaintiff's proposed surreply seeks to explain its prior statement regarding John Hurry and the other issues raised in Defendant's reply. Supp. Resp. (doc. 50).
The Court concludes that it need not resolve this factual dispute in order to reach a decision on the motion currently before

1  Lastly, Plaintiff asserts that Defendant's arguments
2 regarding prepayment do not demonstrate the consideration required
3 of a new accord and satisfaction.  Resp. (doc. 48) at 8.
4 Specifically, Plaintiff argues that there is no evidence that any
5 new agreement was made or even discussed between the parties that
6 would allow a prepayment of the debt as consideration.  Id.
7 "Without a new agreement or a meeting of the minds regarding the
8 intent of a prepayment, the prepayment accomplishes nothing other
9 than a reduction of the amount owed by October 1, 2005."  Id.
10 Citing First Hartford and Melroy, the same authority cited by
11 Defendant, Plaintiff notes that the parties in each of these cases
12 had communicated with one another and agreed to enter into new
13 agreements that modified their former contracts.  Id. at 8-9
14 (citing First Hartford Realty Corp. v. Ellis, 434 A.2d 314 (Conn.
15 1980), and Melroy v. Kemmerer, 67 A. 699 (Pa. 1907)).  Plaintiff
16 argues that no such agreement or meeting of the minds occurred
17 here.  Id. at 9.  The Court agrees with Plaintiff.

18  In the case at bar, the parties specifically negotiated the
19 terms of the Settlement Agreement, including the amounts and
20 timing of payments.  Defendant attempts to create a "dispute"
21 regarding whether it could pay late under Payment Option #2.
22 This, however, is not a legitimate "dispute" as the contract
23 clearly defines the payment schedules, including dates of
24 payments, and declares that "time is of the essence" on all the

---

it.  Thus, the Court sees no reason to extend briefing beyond that
contemplated in the federal rules and local rules governing civil
procedure.  No further briefing is necessary or permitted, and
Defendant's motion to strike shall be granted.

1  contract terms, thus, including the listed payment dates.  Exbt. B
2  (doc. 44) at 5.  No dispute existed regarding whether Defendant
3  retained the option to pay according to Payment Option #2.  The
4  Settlement Agreement itself indicates that, after missing the
5  clearly defined July 1, 2005 deadline of Payment Option #2,
6  Defendant was then obligated to pay Plaintiff under Payment Option
7  #1 to avoid the filing of the judgment.  Exbt. B (doc. 44) at 1-2.
8  Hence, Defendant was obligated to pay $35,000 <u>by</u> August 1, 2005,
9  and $45,000, or a total of $105,000, <u>by</u> October 1, 2005.  <u>Id.</u>  The
10 $50,000 that was ultimately paid by Defendant on July 29, 2005 was
11 a full payment of the amount due by August 1, 2005, and a partial
12 payment of the amount due by October 1, 2005, leaving a $30,000
13 balance to be paid by October 1, 2005, if Defendant intended to
14 pay in accordance with Payment Option #1.  The subject claim was
15 not disputed, thus, Plaintiff's negotiation of the July 29, 2005
16 check did not equate to consideration for a new accord.

17      Additionally, the Court does not agree that Defendant's
18 prepayment of $15,000 constituted consideration for a new accord.
19 In response to Plaintiff's assertion that the parties never
20 discussed or had a meeting of the minds regarding a new accord,
21 Defendant merely argues that none of the cited Arizona cases
22 discussing legal consideration for an accord and satisfaction have
23 considered whether prepayment of a liquidated debt is legal
24 consideration for an accord and satisfaction.  Reply (doc. 49) at
25 9.  To prove the existence of an accord and satisfaction, a party
26 must show that there was, among other things, an assent or meeting
27 of the minds.  <u>See</u> <u>Flagel</u>, 755 P.2d at 1188.  On that point,
28 Defendant has only stated that "there was an assent or meeting of

1   the minds in that SCA accepted the check knowing that the debt was
2   to be considered as 'paid in full[.]'"  Motion (doc. 43) at 8.
3   However, Defendant produces no evidence indicating that the
4   parties had an agreement or meeting of the minds regarding a new
5   accord where such "prepayment" would equate to consideration.
6       The Court shall deny Defendant's motion to enforce the
7   settlement agreement and for summary judgment.  Defendant is not
8   entitled to keep the $30,000 that was paid under protest and
9   returned to Defendant by Plaintiff.

10      **C. Defendant's Payment "Under Protest"**
11      Lastly, although Defendant paid the final $30,000 to
12  Defendant on September 30, 2005, therefore prior to the October 1,
13  2005 deadline, Plaintiff requests that the Court file the
14  stipulated judgment against Defendant, because the payment was
15  made "under protest," and, thus, failed to satisfy an "accord."
16  Resp. (doc. 48) at 6.  Plaintiff asserts that under A.R.S. § 47-
17  1207(B), Defendant was required to pay the final payment without
18  reservation in order to satisfy the accord (i.e. the Settlement
19  Agreement) and avoid entry of the stipulated judgment.  Id.
20      Defendant challenges Plaintiff's assertions, arguing that the
21  Settlement Agreement was not an accord, and, that, in any event,
22  A.R.S. § 47-1207(B) does not apply in these circumstances.  Reply
23  (doc. 49) at 4-5.  First, Defendant argues that if the Court
24  accepts Plaintiff's contention that the amount of payment due on
25  October 1, 2005 was liquidated and undisputed, then, by definition
26  Defendant's final payment was not pursuant to an accord and
27  satisfaction.  Id. at 4.  Second, Defendant argues that A.R.S. §
28  47-1207(B) does not apply here because it was "enacted to prevent

- 13 -

a recipient of a check paid pursuant to an accord and satisfaction from unilaterally altering the offer by placing words of reservation on its acceptance of payment[.]" Id. at 4-5 (citing Connecticut Printers Inc. v. Gus Kroessen, Inc., 184 Cal.Rptr. 436, 437-39 (1982)).

At the outset, the Court notes that since the filing of the parties' briefs on this issue, A.R.S. § 47-1207 was repealed by the Arizona State Legislature. 2006 Ariz. Legis. Serv. Ch. 53 (S.B. 1250)(West) ("Title 47, chapter 1, Arizona Revised Statutes, is repealed."). Section 47-1308 now controls performance or acceptance under reservation of rights.

Under A.R.S. § 47-1308, a party may perform under a reservation of rights without prejudicing those rights. However, this rule does not apply to an accord and satisfaction. A.R.S. § 47-1308(B).

> A. A party that with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.
>
> B. Subsection A does not apply to an accord and satisfaction.

A.R.S. § 47-1308. The purpose of this provision, as defined in the Uniform Commercial Code Comment, is to provide "machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like." U.C.C. § 1-207, comment 1 (2004). The Court finds this defined purpose to be on

par with the facts of this case. See Employers Mut. Cas. Co. v. McKeon, 821 P.2d 766, 770 (Ariz. 1991) ("A settlement agreement should be construed as an ordinary contract."). Thus, Plaintiff's argument is misplaced.

Defendant paid Plaintiff a total of $105,000 before October 1, 2005, as was required by the Settlement Agreement. Notice (doc. 45) at 2; Exbt. A (doc. 45) at 1. In their contract, the parties agreed that the "Judgment shall not be lodged or entered unless Renegade fails to make a payment under Section 1 of this Agreement within ten calendar days following the due date of such payment, which occurrence shall constitute a default under thus Agreement." Exbt. A (doc. 45) at 1-2. Therefore, because Plaintiff was fully paid in accordance with the requirements of the Settlement Agreement, no default occurred. Consequently, the stipulated judgment should not be entered.

Although the Court has resolved all of the pending motions in this matter, the final determination regarding what money Defendant currently owes Plaintiff remains unresolved. The Court has determined that Defendant is required to pay Plaintiff the $80,000 balance that remains according to Payment Option #1 of the Settlement Agreement. Although Defendant originally paid this amount to Plaintiff ($50,000 check on July 29, 2005 and $30,000 check on September 30, 2005), Plaintiff returned both of these payments to Defendant. See PSOF (doc. 47) at ¶ 1. With no guidance or requests from the parties as to how payment of the $80,000 balance should be resolved and whether interest should attached to this unpaid balance, the Court is unable to issue a final order on the matter.

1  Therefore,

2  IT IS ORDERED that Defendant's motion to strike (doc. 51) is
3  GRANTED.

4  IT IS FURTHER ORDERED that Defendant's Motion to Enforce
5  Settlement Agreement; Alternatively Motion for Summary Judgement
6  as to Settlement Agreement (doc. 43) is DENIED.  Defendant is not
7  entitled to retain the $30,000 that it paid under protest.

8  IT IS FURTHER ORDERED that Plaintiff's motion to direct the
9  Clerk to enter judgment (doc. 45) is DENIED.  The Clerk shall not
10 file or enter judgment in accordance with Plaintiff's request.

11 IT IS FINALLY ORDERED that the parties each have twenty (20)
12 days from the date of this order to submit a proposed final order
13 or judgment for the Court to enter, which includes the return of
14 the $80,000 to Plaintiff, determines whether interest is owing,
15 and, if so, from what date such interest should begin to accrue
16 and at what rate.  Each party shall then have ten (10) days from
17 the date of the filing of the other side's proposed order or
18 judgment to file an objection to such proposal.

19 DATED this 17th day of July, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

25 Copies to counsel of record

- 16 -